ORANGE–CRUSH GRAPICO BOTTLING
COMPANY, a corporation, Plaintiff,

v.

The SEVEN–UP COMPANY, a corpo-
ration, Defendant.

Civ. A. No. 7051.

United States District Court,
N. D. Alabama, S. D.

Feb. 10, 1955.

Cabaniss & Johnston, Birmingham, Ala., for plaintiff.

Spain, Gillon & Young, Birmingham, Ala., for defendant.

LYNNE, Chief Judge.

Moving to quash service of the summons and complaint herein, defendant, a foreign corporation not qualified to do business in Alabama, contends that the court lacks jurisdiction of the subject matter of the action and of the defendant, that the service of process on defendant was insufficient, and that the statute under which service was had is unconstitutional.

Service of process in this case was had on defendant by serving the Secretary of State who, in turn, forwarded the summons and complaint to the defendant. The procedure followed was in conformity with the provisions of Section 193, Title 7, Alabama Code of 1940, as amended. This section provides in part that "wherever a foreign corporation has carried on or transacted business in this state without qualifying to do business herein as is provided by the constitution and statutes of this state and there is no other agent and process, pleadings or papers cannot be served on such foreign corporation as is provided in the preceding section, then any legal process, pleadings or papers, * * * concerning causes of action arising out of or as consequence of acts or business done in this state," may be served upon the Secretary of State.

 Since jurisdiction of this court in this case, removed from the state court in which originally it was filed, is predicated solely on diversity of citizenship, there are traditionally two aspects to the question presented by the motion to quash.

"There are two parts to the question whether a foreign corporation can be held subject to suit within a state. The first is a question of state law: has the state provided for bringing the foreign corporation into its courts under the circumstances of the case presented? There is nothing to compel a state to exercise jurisdiction over a foreign corporation unless it chooses to do so, and the extent to which it so chooses is a matter for the law of the state as made by its legislature. If the state has purported to exercise jurisdiction over the foreign corporation, then the question may arise whether such attempt violates the due process clause or the interstate commerce clause of the federal constitution. Const. art. 1, § 8, cl. 3; Amend. 14. This is a federal question and, of course, the state authorities are not controlling. But it is a question which it not reached for decision until it is found that the State statute is broad enough to assert jurisdiction

over the defendant in a particular situation."[1]

An examination of the codal provisions in question reveals that the statute contains two basic requirements for service of process on an unqualified foreign corporation: (1) Such foreign corporation must have carried on or transacted business in this state. (2) The cause of action must arise out of or as a consequence of acts or business done in the state. There is definite interrelationship between these two requirements.

■ In announcing the current Alabama rule with respect to service of process on unqualified foreign corporations, the Supreme Court of Alabama, after considering the opinion of the United States Supreme Court in International Shoe Co. v. State of Washington,[2] said:

"This new rule, as observed in the Shoe Company case, seems to be based on 'traditional notions of fair play and substantial justice', so that the doing of business by the corporate defendant in a non-resident state so as to justify subjecting it to suit is measured by the extent of its activities and the question vel non of the fairness as against the inconvenience to the defendant of requiring trial away from its home. The fictional concepts of 'presence' and 'submission or implied consent' seem to be merely admeasurements of this justification.

"Under this inquiry, as we read the decisions, there would be subsumed the question of whether the action was based on a liability arising out of the local activities, it naturally being less burdensome to subject a corporation to defense of actions so arising than those arising elsewhere. * * *" Boyd v. Warren Paint & Color Co., 1950, 254 Ala. 687, 49 So.2d 559, 563.

Similar observations are contained in numerous cases.[3]

Relying on a decision from the Second Circuit[4] and various decisions from the Fifth Circuit,[5] defendant asserts that it was not doing business in Alabama so as to be amenable to process. An examination of these decisions makes it clear that in each case the court was considering whether or not the state in which the action was pending had chosen to assert jurisdiction over an unqualified foreign corporation under the facts there presented. None of the cases arose from Alabama and are, therefore, not authoritative as to whether or not the statutes of Alabama have provided for bringing this defendant into court on the facts of this case.

Speaking of the nature and extent of the requirement that an unqualified foreign corporation must be doing business in Alabama, the Supreme Court of Alabama recently observed:

" * * * The issue is regarded in this jurisdiction as a federal ques-

1. Pulson v. American Rolling Mill Co., 1 Cir., 1948, 170 F.2d 193, 194. The above language has been quoted and the procedure approved in Lone Star Package Car Co., Inc., v. Baltimore & O. R. Co., 5 Cir., 1954, 212 F.2d 147. See also Goldberg v. Southern Builders, 87 U.S.App. D.C. 191, 1950, 184 F.2d 345 and Schmidt v. Esquire, Inc., 7 Cir., 1954, 210 F.2d 908.

2. 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057.

3. E. g., International Shoe Co. v. State of Washington, supra; Robbins v. Benjamin Air Rifle Co., 5 Cir., 1954, 209 F.2d 173.

4. DeSanta v. Nehi Corporation, 2 Cir., 1948, 171 F.2d 696.

5. Employers' Liability Assurance Corporation v. Lejeune, 5 Cir., 1951, 189 F.2d 512; Rosenthal v. Frankfort Dist. Corp., 5 Cir., 1951, 193 F.2d 137; Gillentine v. Illinois Wesleyan University, 5 Cir., 194 F.2d 970; Pacific Employers' Ins. Co. v. Parry Navigation Co., Inc., 5 Cir., 1952, 195 F.2d 372; and Polizzi v. Cowles Magazines, Inc., 5 Cir., 1952, 197 F.2d 74. To this list of Fifth Circuit cases may also be added Nielsen v. Arabian-American Oil Co., 5 Cir., 1953, 206 F.2d 391; Robbins v. Benjamin Air Rifle Co., 5 Cir., 1954, 209 F.2d 173 and Davis v. Asano Bussan Co., 5 Cir., 1954, 212 F.2d 558.

tion of whether subjection of the defendant to this sovereignty comports with federal due process. Ford Motor Co. v. Hall Auto Co., 226 Ala. 385, 147 So. 603; St. Mary's Oil Engine Co. v. Jackson Ice & Fuel Co., 224 Ala. 152, 138 So. 834. As was said in Ford Motor Co. v. Hall Auto Co., supra: 'It is recognized that the federal authorities are controlling on questions entering into the inquiry and ascertainment of the facts (1) of doing business, and (2) of authorized agency on which process must be served, or (3) those of due process, equal protection, and interstate commerce. * * * " [6]

█ Recognizing that "each case depends upon its own facts",[7] this court is of the opinion that under the current federal cases [8] as well as the Alabama cases [9] defendant was doing business in Alabama. While a somewhat elaborate finding of facts distilled from the voluminous evidence adduced upon the motion is being filed separately but contemporaneously herein, a brief resume thereof leaves no doubt as to this ultimate conclusion.

The defendant's activities in Alabama were neither irregular nor casual but were systematic and continuous through the years in question. They resulted in a large volume of business for defendant. Defendant's method of increasing its own business and income was by the process of building up the business of its developers. Its agents undertook to increase the sale of Seven-Up drinks, which was the business of the local de-

velopers. Defendant's agents, making regular, systematic and frequent trips to Alabama, engaged in all of the techniques and devices known to modern sales practices in promoting the sale by the developer of Seven-Up drinks,[10] such as conducting sales meetings and schools; demonstration of sales techniques in the field, on truck, and in stores; demonstration by motion pictures; placing advertising in stores or on roadsides; door-to-door sampling and sales in homes; store demonstrations; ordering supplies and equipment for developers; analyzing products, inspecting plants and machinery, and installation of a new plant; negotiating and making agreements in Alabama, including agreements for new franchises; and carrying out other objectives, such as elimination of six-ounce bottles, keeping the Birmingham plant as an exclusive Seven-Up bottler, and refranchising Birmingham's outlying territories.

█ Turning to a consideration of the second requirement of the statute—namely, that the cause of action must arise out of or as a consequence of acts or business done in the state—it is necessary to consider each alleged cause of action as well as the facts developed with respect to each in connection with the motion to quash.

█ The first cause of action is for breach of defendant's agreement to issue plaintiff a franchise in the form then existing or in the form of defendant's regular printed contract. The alleged agreement which is the foundation of the cause of action was made partly in Alabama. The franchise which was to

6. Boyd v. Warren Paint & Color Co., supra.

7. People's Tobacco Co. v. American Tobacco Co., 1918, 246 U.S. 79, 87, 38 S. Ct. 233, 235, 62 L.Ed. 581.

8. E. g., International Shoe Co. v. State of Washington, supra, and Lone Star Package Car Co., Inc. v. Baltimore & O. R. Co., supra.

9. E. g., Boyd v. Warren Paint & Color Co., supra.

10. The observation of the Supreme Court of Vermont in Ruppert v. Morrison, 1952, 117 Vt. 83, 85 A.2d 584, 590, is quite pertinent on this point: "The second group of local contacts consists of these: extensive advertising; continuous and systematic promotional work tied in with and related to the area advertising, and aimed to preserve and increase the market for Ruppert products in Vermont. Preserving and increasing a local consumers' market is an intrastate activity, and not 'mere solicitation.' "

be issued was to be performed in Alabama. The agreement and franchise to be issued were related to the doing of business by defendant in Alabama. In Omaha Hardwood Lumber Co. v. J. H. Phipps Lumber Co., 8 Cir., 1943, 135 F.2d 3, 6, the Phipps Lumber Company sued in the state of Arkansas to cancel a contract made with Omaha Lumber Company on the ground that plaintiff's general manager, who made the contract, did not have authority to do so. Omaha Lumber Company had previously done business in Arkansas but had withdrawn from the state and had ceased to do business at the time the action was filed. Service of process was had on the defendant by serving the State Auditor under a statute which permitted such service "upon any cause of action, whether in contract or tort". Pertinent to the question under consideration is the following holding from that opinion:

"Under the construction of this statute made by the Arkansas courts, service thereunder upon a foreign corporation that has been doing business in the state is valid, even after the corporation's withdrawal from the state, on any cause of action in favor of an Arkansas citizen arising out of the corporation's previous transaction of business in the state. * * * The fact that the present contract was made in Nebraska and not in Arkansas would not necessarily preclude the application of the statute, since the statute has been construed as applying to 'any liability arising from or growing out of contracts made or business done in the state or necessarily incident thereto'. * * * A contract between a foreign corporation doing business in the state and an Arkansas citizen, no matter where made, which is intended to be performed in part within that state while the corporation is authorized to do business there, may, we think, in a sufficient sense, give rise to a 'liability arising from or growing out of * * * business done in the state or necessarily incident thereto', to be within the operation of the statute. * * * *"

The second cause of action is based on alleged fraud. This alleged fraud relates to matters connected with or arising out of the doing of business by defendant in Alabama. Activities of defendant in Alabama form a part of the grievances upon which the cause of action is predicated.

■ The court is of the opinion that each cause of action arose out of or as a consequence of acts or business done in Alabama by defendant. Even if this were not true as to one cause of action, the court would nevertheless have jurisdiction over defendant with respect to the other cause of action and the Alabama statute would be sufficient to sustain service of process in this action.

■ Since service of process in this cause was authorized by the Alabama statute mentioned above, the only remaining question relates to the constitutionality of such statute. Section 193 has been held to be constitutional.[11] Irrespective of this precise authority, the constitutionality of the statute is not in doubt.[12]

■ The motion to dismiss the complaint on the ground that the contract sued on is lacking in mutuality, is not well taken for the reason that nonmutu-

11. Shippers Pre-Cooling Service v. Macks, 5 Cir., 1950, 181 F. 510.

12. International Shoe Company v. State of Washington, supra; Travelers Health Association v. Com. of Virginia ex rel. State Corp. Comm., 1950, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154; Parmalee v. Iowa State Traveling Men's Ass'n, 5 Cir., 1953, 206 F.2d 518; Gillioz v. Kincannon, 1948, 213 Ark. 1010, 214 S.W.2d 212; Wein v. Crockett, 1948, 113 Utah 301, 195 P.2d 222; Smyth v. Twin State Improvement Corp., 1951, 116 Vt. 569, 80 A.2d 664, 25 A.L.R.2d 1193; McDaniel v. Textile Workers Union of America (C.I.O.), 1952, 36 Tenn.App. 236, 254 S.W.2d 1; and State ex rel. Weber v. Register, Fla., 1953, 67 So.2d 619.

ality does not appear from the averments of the complaint. The full facts with reference to the contract and its alleged breach are yet to be developed. This same comment is applicable to that ground of the motion to dismiss taking the point that knowledge of the existence of the alleged contract, which knowledge is denied by the averments of the complaint, is imputed to the plaintiff corporation as a matter of law. The motion to dismiss, therefore, will be denied.